UNITED STATES DISTRICT COURT

DISTRICT OF OREGON

PORTLAND DIVISION

DANIEL P. KLAHN, SR.,

        Plaintiff,

        v.

CLACKAMAS COUNTY BANK,

        Defendant.

Case No. 3:13-cv-00621-ST

OPINION AND ORDER

STEWART, Magistrate Judge:

    Plaintiff, Daniel P. Klahn, Sr. ("Klahn"), appearing *pro se*, filed this action against defendant Clackamas County Bank ("Bank") and two other defendants, arising out of conduct both leading to and resulting in foreclosure of his floating home. The original Complaint alleged a claim under the Fair Debt Collection Practices Act ("FDCPA") against the other defendants and various state law claims against the Bank. After this court dismissed the original Complaint for failure to state a claim, Klahn filed the First Amended Complaint (docket #63) which alleges

1 – OPINION AND ORDER

a claim under the Due Process Clause of the Fourteenth Amendment and four state law claims against the Bank as the sole defendant.

The Bank has filed a Motion to Dismiss the First Amended Complaint (docket #65) under FRCP 12(b)(1) for lack of subject matter jurisdiction and under FRCP 12(b)(6) for failure to state a claim upon which relief can be granted.[1]  For the reasons stated on the record at the hearing and summarized below, the motion for lack of subject matter jurisdiction is denied and all claims except part of Claim 4 are dismissed for failure to state a claim.

### I.    Motion to Dismiss for Lack of Jurisdiction

When a motion to dismiss for lack of jurisdiction is filed in conjunction with other motions to dismiss under FRCP 12, the court normally considers the issue of jurisdiction first. Doing so prevents a court without subject matter jurisdiction from prematurely dismissing a case with prejudice. *Sinochem Int'l Co. Ltc. v. Malaysia Int'l Shipping Corp.*, 549 US 422, 430-31 (2007); *Potter v. Hugh*, 546 F3d 1051, 1056 n2 (9th Cir 2008).

#### A.    Which Complaint Governs Jurisdiction

Initially, this court must determine which complaint governs the jurisdictional analysis. The original Complaint alleged a claim for violation of the FDCPA against the other two defendants as the basis for federal question jurisdiction under 28 USC § 1331 and also alleged diversity jurisdiction under 28 USC § 1332.  This court dismissed the FDCPA claim with prejudice and the remaining state law claims without prejudice.  Klahn then filed the First Amended Complaint which again invokes federal question jurisdiction by alleging a new federal

---

[1] The Bank also seeks dismissal on the basis that the First Amended Complaint was untimely filed on August 25, 2013, two days after it was due.  However, Klahn explains that on the due date, his wife was injured in a motorcycle accident.  Therefore, this court will excuse the late filing of the First Amended Complaint.

claim against the Bank under the Fourteenth Amendment. For the following reasons, the court looks to the original Complaint for subject matter jurisdiction.

As a general rule, jurisdiction is governed by the original complaint. "Subject matter jurisdiction must exist as of the time the action is commenced." *Morongo Band of Mission Indians v. Cal. State Bd. of Equalization*, 858 F2d 1376, 1380 n2 (9th Cir 1988) (citations omitted); *see also Grup Data flux v. Atlas Global Grp., LP*, 541 US 567, 571 (2004) (diversity jurisdiction). If the allegations of jurisdiction are "defective," then the court may grant leave to amend under 28 USC § 1953. However, that statute "provides a remedy for defective *allegations* only; 'it does not provide a remedy for defective jurisdiction itself.'" *Morongo Band of Mission Indians*, 858 F2d at 1380 n2 (citations omitted). As to defects of substance, jurisdiction cannot be acquired by some later amendment. *Id* ("[A] district court is powerless to grant leave to amend when it lacks jurisdiction over the original complaint.").[2]

### B.     Supplemental Jurisdiction

With these principles in mind, the court turns to the original Complaint. Federal question jurisdiction existed when the action was commenced, but was lost when the sole federal claim was dismissed, leaving only state law claims.

When a court dismisses on the merits a federal claim that serves as the basis for subject matter jurisdiction, it may retain supplemental jurisdiction under 28 USC § 1367 to adjudicate any state law claims that are related to the federal claim. Consequently, jurisdiction may continue even if the plaintiff abandons the federal claim after it is dismissed with leave to amend.

---

[2] A plaintiff may amend to forsake one form of jurisdiction in favor of claiming entitlement to another form of jurisdiction. When an amended complaint drops all federal claims and alleges only diversity jurisdiction, "it is well established that the amended pleading supersedes the original pleading." *Wellness Community-Nat'l v. Wellness House*, 70 F3d 46, 49 (9th Cir 1995) (citations omitted); *Connectu LLC v. Zuckerberg*, 522 F3d 82, 95-96 (1st Cir 2008) (before any jurisdictional challenge is made and a plaintiff files an amended complaint as of right, it may abandon federal question jurisdiction in lieu of diversity jurisdiction). That is not the scenario presented here.

*Prince v. Rescorp Realty*, 940 F2d 1104, 1105 n2 (9th Cir 1991).  However, if the federal claim is not dismissed on the merits, but is dismissed for lack of subject matter jurisdiction, then the court has "no discretion to retain supplemental jurisdiction over [the] state law claims." *Scott v. Pasadena Unified Sch. Dist.*, 306 F3d 646, 664 (9th Cir 2002) (citations omitted).

This court dismissed the sole federal claim based on a violation of the FDCPA for failure to state a claim, not for lack of subject matter jurisdiction.  As a result, this court, in its discretion, could exercise supplemental jurisdiction under 28 USC § 1367 over the remaining state law claims in the Complaint.  When dismissing the original Complaint, this court did not make any determination regarding the exercise of supplemental jurisdiction.

This court is not required to retain supplemental jurisdiction over any related state law claims alleged by Klahn.  To the contrary, "in the *usual* case in which federal-law claims are eliminated before trial, the balance of factors . . . will point toward declining to exercise jurisdiction over the remaining state law claims." *Gini v. Las Vegas Metro. Police Dept.*, 40 F3d 1041, 1046 (9th Cir 1994) (citation omitted).  However, if a case has been pending in federal court for an extended time, the court is familiar with the issues, and a good deal of time has been invested in the matter, then considerations of judicial economy favor retaining jurisdiction. *Munger v. City of Glasgow Police Dept.*, 227 F3d 1082, 1088 n4 (9th Cir 2000).

Judicial economy is not an issue here because it is still early in the litigation; a dismissal will not require duplicative proceedings in state court or cause great delay.  Other factors favoring retention of supplemental jurisdiction include the running of the statute of limitations on the state law claims or a clear resolution of the state law claims. *RWJ Mgmt. Co. Inc. v. BP Products N. Am., Inc.*, 672 F3d 476, 480 (7th Cir 2012).  The record is silent as to those

considerations. Therefore, this court has no reason to retain supplemental jurisdiction over the state law claims after dismissing the FDCPA claim in the original Complaint.[3]

Dismissal of state law claims for lack of supplemental jurisdiction is improper, however, where an independent basis for jurisdiction exists. The original Complaint did invoke another independent basis for jurisdiction, namely diversity jurisdiction under 28 USC § 1332. Because the federal claim provided a basis for federal question jurisdiction, this court did not previously address this alternative basis for subject matter jurisdiction.

C.     **Diversity Jurisdiction**

The original Complaint alleged that complete diversity existed between the parties because Klahn is a citizen of California and the Bank and other defendants are citizens of Oregon. However, diversity jurisdiction also requires that the amount in controversy exceed $75,000.00, exclusive of interest and costs. 28 USC § 1332(a)(1). In ruling on the prior motions to dismiss, this court noted that the original Complaint failed to allege that the amount in controversy exceeded $75,000.00, but did no further analysis because Klahn also alleged a federal claim sufficient for federal question jurisdiction. Now it must decide whether Klahn alleged the necessary amount in controversy in the original Complaint.

The amount in controversy is determined when the action is commenced "from the face of the pleadings.'" *Crum v. Circus Circus Enters.*, 231 F3d 1129, 1131 (9th Cir 2000). "To

---

[3] Even if the First Amended Complaint had been the first and only complaint filed, the result is the same although the analysis differs. As discussed below, Klahn's Fourteenth Amendment claim fails to state a claim. The Bank deems this failure to constitute a lack of subject matter jurisdiction. The failure to plead and prove an essential element of a claim is sometimes erroneously referred to as a jurisdictional defect. However, subject matter jurisdiction is not defeated by the possibility that the allegations might fail to state a cause of action. *Steel Co v. Citizens for a Better Env't*, 512 US 83, 89 (1998) (citation omitted). "Dismissal for lack of subject-matter jurisdiction because of the inadequacy of the federal claim is proper only when the claim is 'so insubstantial, implausible, foreclosed by prior decisions of this Court, or otherwise completely devoid of merit as not to involve a federal controversy.'" *Id* (citation omitted). Because the Bank is not a state actor, Klahn's due process claim against the Bank is wholly insubstantial and frivolous. Therefore, this court lacks subject matter jurisdiction over it. If the First Amended Complaint governed the jurisdictional analysis, then this court would have "no discretion to retain supplemental jurisdiction over [the] state law claims." *Scott*, 306 F3d at 664.

justify dismissal, it must appear to a legal certainty that the claim is really for less than the jurisdictional amount." *Id.* Under the "legal certainty standard," it must be obvious upon the face of the complaint that the suit cannot involve the necessary amount. *Geographic Expeditions, Inc. v. Estate of Lhotka ex rel. Lhotka*, 599 F3d 1102, 1106 (9th Cir 2010). The Ninth Circuit permits a dismissal under this standard "when a rule of law or limitation of damages would make it virtually impossible for a plaintiff to meet the amount-in-controversy requirement." *Pachinger v. MGM Grand Hotel-Las Vegas, Inc.*, 802 F2d 362, 364 (9th Cir 1986). Dismissal also is permitted when the amount alleged is made in "bad faith," *i.e.* solely to invoke diversity jurisdiction. *Diefenthal v. C.A.B.*, 681 F2d 1039, 1052 (5th Cir 1982); *see Crum*, 231 F3d at 1131 ("The sum claimed by the plaintiff controls so long as the claim is made in good faith."). To defeat a motion to dismiss challenging the amount in controversy, the burden is on the plaintiff to set forth facts which, if true, would prevent the trier-of-fact from concluding that the damages are below the jurisdictional amounts. *Barrett v. Lombardi*, 239 F3d 23, 30-31 (1st Cir 2001).

Klahn contends that he seeks damages well over $75,000.00 based on the amount in dispute on his breach of contract claim. That claim alleges that the Bank breached the promissory note of $144,000.00 by improperly adding moorage arrearages to his loan. Klahn Decl. (docket #63-2), Ex. A. [4] That claim was previously dismissed for failure to state a claim. However, a dismissal of a claim that reduces the demand below $75,000.00 does not ordinarily oust diversity jurisdiction, as long as it was originally made in good faith. *St. Paul Mercury Indem. Co. v. Red Cab Co.*, 303 US 283, 295-96 (1938); *Watson v. Blankinship*, 20 F3d 383, 387 (10th Cir 1994). "When dismissal for lack of jurisdictional amount also constitutes a decision on

---

[4] The parties have submitted documents with various attachments. Citations to declarations are identified by the last name of the declarant and citations are to paragraphs and the attached exhibits.

the merits, the court should be even more reluctant to dismiss the case." *Watson*, 20 F3d at 388. For purposes of the jurisdictional analysis, the issue is whether Klahn possessed a good faith belief that he was entitled to recover this amount. This court has no reason to believe that Klahn alleged this claim in bad faith, especially because he is not trained in the law.

Thus, based on the claims alleged in the original Complaint, this court concludes that it has diversity jurisdiction under 28 USC § 1332.

## II.     Motion to Dismiss for Failure to State a Claim

### A.     Legal Standard

In order to state a claim for relief, a pleading must contain "a short and plain statement of the claim showing that the pleader is entitled to relief." FRCP 8(a)(2). To meet this standard and "survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true to 'state a claim to relief that is *plausible* on its face.'" *Ashcroft v. Iqbal*, 556 US 662, 678 (2009) (emphasis added), quoting *Bell Atl. Corp. v. Twombly*, 550 US 544, 555 (2007). A plausible claim "does not require 'detailed factual allegations,'" but does demand "more than an unadorned, the-defendant-unlawfully-harmed-me accusation." *Id.* Labels and conclusions or a formulaic recitation of the elements of a cause of action will not do. *Twombly*, 550 US at 555.

In evaluating a motion to dismiss, the court must accept the allegations of material fact as true and construe those allegations in the light most favorable to the non-moving party. *Sateriale v. R.J. Reynolds Tobacco Co.*, 697 F3d 777, 783 (9th Cir 2012). In addition to the allegations of the complaint, the court may also consider documents whose authenticity no party questions that are attached to or incorporated by reference into the complaint, as well as matters capable of judicial notice. *Skilstaf, Inc. v. CVS Caremark Corp.*, 669 F3d 1005, 1016 n9 (9th Cir 2012); *Coto Settlement v. Eisenberg*, 593 F3d 1031, 1038 (9th Cir 2010). In resolving the motion to

7 – OPINION AND ORDER

dismiss, the court may consider all of these documents and need not accept as true allegations in the complaint that contradict these sources. *Daniels-Hall v. Nat'l Educ. Ass'n*, 629 F3d 992, 998 (9th Cir 2010) ("We are not, however, required to accept as true allegations that contradict exhibits attached to the Complaint or matters properly subject to judicial notice, or allegations that are merely conclusory, unwarranted deductions of fact, or unreasonable inferences.").

In support of its motion, the Bank has submitted copies of documents that are signed by the parties whose authenticity is not questioned. These are documents which are capable of judicial notice, with the exception of the March 12, 2013, email from Bank employee Shelly Strand. Koehler Decl. (docket #67), ¶ 9, Ex. A, p. 3. "The court may not take judicial notice of a fact that is 'subject to reasonable dispute.'" *Lee v. City of L.A.*, 250 F3d 668, 689 (9th Cir 2001), quoting FRE 201(b). This email reports a conversation between Klahn's tenant and the Bank, which Klahn disputes occurred as described in the email. Thus, judicial notice is denied as to that email.

In one of his declarations (docket #63-2), Klahn also requests the court to take judicial notice of both public and non-public documents. At the hearing, that request was granted except as to two exhibits (docket #75).

In addition, both parties have submitted facts outside the allegations in the First Amended Complaint and documents of which this court has not taken judicial notice. The court cannot consider those facts or documents in resolving this motion.

### B. Chronology

Based on the allegations in the First Amended Complaint and other documents, the chronology leading up to this lawsuit is summarized as follows:

2008:  While living in Montana, Klahn and his wife bought a floating home in Portland, Oregon, which they intended to use as their primary home.  However, their move to Oregon was delayed.  In the interim, they have lived in California and have rented the floating home.

2/25/09:  The Bank made a $213,200 loan to Klahn secured by note and by a Consumer Security Agreement on the floating home.

1/3/11:  The Bank obtained an Assignment of Rents as additional security for the loan.

11/21/11:  The Bank filed a lawsuit in Multnomah County Circuit Court to foreclose its security interest in the floating home.

2/8/12:  The parties settled the lawsuit by executing a Settlement and Loan Modification Agreement, which included the $2,250 advance by the Bank for moorage fees added to the loan.

10/22/12:  Without notice to Klahn, the Bank advanced $3,000 to Captain's Moorage to pay the slip rental arrearage for the months of May through August 2012, and added that amount to the loan.

12/14/12:  The Bank filed a second lawsuit in Multnomah County Circuit Court to foreclose its security interest in the floating home based on the Klahn's alleged failure to pay moorage fees due to Captain's Moorage and real property taxes for 2011-12 and 2012-13.  Klahn disputes that he was in default.

2/7/13:  Based on unsuccessful attempts to personally serve Klahn with the Summons and Complaint, the Multnomah County Circuit Court entered an Order Allowing Service by Publication and by posting a copy on the floating home.

2/11/13:  A notice of the lawsuit was posted on the floating home.

3/2013:  The Bank contacted Malcolm and Tammy Macdonald, Klahn's tenants.  The Macdonalds moved out of the floating home at the end of March.

      4/3/13:  Based on Klahn's failure to appear, the Multnomah County Circuit Court entered a General Judgment and Money Award (Ex Parte) foreclosing the Bank's security interest.

      4/10/13:  Klahn filed a Complaint in this court alleging various claims against the Bank.

      6/17/13:  The Bank filed an unopposed motion for extension of time to respond to Klahn's Motion for Emergency Order stipulating that it would request the sheriff suspend the foreclosure sale until the court ruled on Klahn's motion.

      7/12/13:  The Bank contacted the Multnomah County Sheriff requesting postponement of the sale of the floating home.

      7/24/13:  This court denied Klahn's Motion for Emergency Order and granted the Bank's motion to dismiss, allowing Klahn leave to amend the complaint.

      7/31/13:  The Bank requested the sheriff resume the foreclosure sale.

      8/25/13:  Klahn filed a motion in state court to vacate and set aside the default judgment.

      9/20/13:  The state court denied Klahn's motion to vacate and set aside the default judgment.

      **C.**     <u>**Analysis**</u>

Claim 5 in the First Amended Complaint alleges a violation of Klahn's due process rights under the Fourteenth Amendment which provides in relevant part that "nor shall any State deprive any person of life, liberty, or property, without due process of law; nor deny to any person within its jurisdiction the equal protection of the laws."  Since the Fourteenth Amendment is directed only at "any State," it can be violated only by conduct that may be fairly characterized as "state action."  *Lugar v. Edmondson Oil Co., Inc.*, 457 US 922, 924 (1982).  Klahn alleges the Bank, a private entity, violated his due process rights.  However, the "state action" standard

under the Fourteenth Amendment is invoked "only when it can be said that the State is *responsible* for the specific conduct of which the plaintiff complains." *Naoko Ohno v. Yuko Yasuma*, 723 F3d 984, 994 (9th Cir 2013), quoting *Blum v. Yaretsky*, 457 US 991, 1004 (1982). Klahn alleges the Bank violated his rights by pursuing the foreclosure action in the Multnomah Circuit Court, failing to properly serve him with the complaint in that action, and interfering in his business relationship with Captain's Moorage. The Bank, a private business, was solely responsible for that alleged conduct. Therefore, Klahn has no cause of action against the Bank under the Fourteenth Amendment.

The First Amended Complaint also alleges common law claims for breach contract (Claim 1), breach of the covenant of good faith and fair dealing (Claim 2), fraud (Claim 3), and "tortious interference with a contract" (more commonly referred to intentional interference with economic relations) (Claim 4).

As explained in this court's previous Order (docket #61), Klahn's claims for breach of contract and breach of the covenant of good faith and fair dealing must be dismissed under the doctrine of collateral estoppel. The general judgment for the Bank in the state court foreclosed Klahn's ability to contest the determination that he defaulted on the promissory note. The doctrine of *res judicata*, including collateral estoppel, as to matters essential to the judgment, applies to judgments by default. *Gwynn v. Wilhelm*, 226 Or 606, 609, 360 P2d 312, 313 (1961).[5] Although that state court entered a default judgment without allowing Klahn the opportunity to argue a substantive defense, the factual finding that Klahn's loan was in default was essential to the state court's order foreclosing the security interest in the note. Koehler Decl. (docket #38),

---

[5] Under the Erie Doctrine, the doctrine of collateral estoppel is substantive law. *Priest v. Am. Smelting & Ref. Co.*, 409 F2d 1229, 1231 (9th Cir 1969). Because this case is based on diversity jurisdiction, the Oregon doctrine of collateral estoppel applies.

11 – OPINION AND ORDER

Ex. G, p. 1. Claim 1 for breach of contract in the First Amended Complaint alleges that because Klahn did not default on his note, the Bank breached by foreclosing on his floating home. Thus, this claim turns on a factual determination that was essential to the state court order.

With respect to Claim 2 for breach of the covenant of good faith and fair dealing, the state court necessarily decided that the Bank acted in accordance with the Settlement and Loan Modification Agreement when dismissing Klahn's Motion to Vacate the General Judgment. Klahn Decl., Ex. 7. Klahn argued in that motion, as he does here, that the Bank breached the settlement by failing to release the Macdonalds' rental payments back to Klahn or give notice of default at his Pleasanton address. *Id*, p. 7. The state court denied Klahn's motion. Thus, he may not re-litigate those same issues in this court. Klahn has voiced understandable frustration that the state court afforded him no meaningful chance to present his case. Regrettably, the law prevents this court from providing him with a second opportunity.

Claim 3 for fraud alleges that the Bank made false statements in the state court proceedings, violated a "stipulation agreement" between the parties that was filed in federal court, and conspired with Captain's Moorage to acquire Klahn's floating home for financial gain. This court previously dismissed Klahn's allegations of conspiracy, which are re-alleged in paragraphs 5-6 in the First Amended Complaint, and dismisses them again for the same reason. With respect to Klahn's allegations of false statements by the Bank in its state court complaint (First Amended Complaint, ¶¶ 1-3), the state court necessarily decided the veracity of the evidence presented in ruling in favor of the defendants.

Klahn's allegations that the Bank violated the "stipulation agreement" (*id*, ¶ 4) are contradicted by the exhibits attached to the original Complaint and other documents. On June 17, 2013, the Bank filed an Unopposed Motion for Extension of Time to File a

12 – OPINION AND ORDER

Response/Reply to Plaintiff's Motion for an Emergency Order (docket #48). In support, Donald Koehler submitted his declaration describing his conversation with Klahn in which the Bank agreed to postpone the foreclosure sale until after the hearing on the motion. Koehler Decl. (docket #50), ¶¶ 5-6. Klahn does not dispute the contents of this conversation, but instead disputes the timing of Mr. Koehler's request for the sheriff to resume the sale of the floating home.

In fact, Klahn's exhibits show that the Bank waited until after the hearing to request rescheduling of the sheriff's sale. The Bank wrote the Multnomah County Sheriff on July 12, 2013, requesting that it postpone the scheduling of the sale "until the court ruled on the motion filed by Mr. Klahn seeking to enjoin the sale from going forward." Klahn Decl., Ex. 5. The court ruled on Klahn's motion on July 24, 2013 (docket #61). On July 31, 2013, Mr. Koehler sent another letter to the sheriff, attaching the court's order and requesting that the sale be scheduled. *Id*. The record shows Mr. Koehler did exactly as the parties stipulated and waited for the court to rule on Klahn's motion before proceeding with the foreclosure sale. Thus, Klahn fails to state a fraud claim based on the Bank's involvement in timing of the sale.

Claim 4 for intentional interference alleges the Bank interfered with Klahn's contracts with both his tenant (Macdonalds) and Captain's Moorage. With respect to Captain's Moorage, the claim is based on the Bank adding to Klahn's loan the moorage fees owed by Klahn to Captain's Moorage. However, as this court previously decided, the Consumer Security Agreement expressly authorizes the Bank to pay expenses necessary to keep the floating home free of "liens" and "claims," and to add such expenses to the balance of the loan. Accordingly, the court dismissed this claim previously and must dismiss it again.

13 – OPINION AND ORDER

Therefore, the only remaining claim — and the only new claim not pled and dismissed in the original Complaint — is part of Claim 4 alleging intentional interference with Klahn's lease agreement with his tenant. Klahn alleges that the Bank made unauthorized contact with the tenant that caused the tenant to terminate the lease early, resulting in lost rent for several months and other expenses incurred to find a new tenant. The Bank argues that this claim lacks merit because its contact with the tenant related to unpaid rent and, therefore, was authorized by the Consumer Security Agreement and Assignment of Rents. However, that argument is based on facts outside the allegations of the First Amended Complaint which this court cannot consider at this juncture. Klahn emphatically contests that his tenant was in arrears in rent payments. Based solely on the pleadings, Klahn alleges a viable claim that survives a motion to dismiss.

## ORDER

The Bank's Motion to Dismiss (docket #65) is DENIED in PART and GRANTED in PART as follows:

DENIED under FRCP 12(b)(1) for lack of subject matter jurisdiction;

GRANTED under FRCP 12(b)(6) as to Claims 1, 2, 3, and 5 and part of Claim 4 alleging intentional interference with Captain's Moorage; and

DENIED under FRCP 12(b)(6) as to part of Claim 4 alleging intentional interference with the lease agreement.

Therefore, the only remaining claim is part of Claim 4 alleging intentional interference with Klahn's tenant-landlord relationship.

DATED  December 12, 2013.                            s/ Janice M. Stewart

                                                     Janice M. Stewart
                                                     United States Magistrate Judge